2006 ND 166

**Robert E. DAHL and Mark Weigand, d/b/a Tailfeather Inn, (The Convent), Plaintiffs and Appellants**

v.

**Victor MESSMER and Clara Messmer, Defendants and Appellees.**

No. 20050426.

Supreme Court of North Dakota.

July 24, 2006.

Matthew R. Kolling (argued), and Randall N. Sickler (on brief), Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, ND, for plaintiffs and appellants.

Bruce A. Selinger, Kubik, Bogner, Ridl & Selinger, Dickinson, ND, for defendants and appellees.

VANDE WALLE, Chief Justice.

[¶ 1] Robert Dahl and Mark Wiegand ("Dahl and Wiegand") appeal from a partial summary judgment on their claims brought against Victor and Clara Messmer ("Messmer") regarding the Management Contract and from a judgment as a matter of law on their remaining claims against Messmer. We affirm.

I

[¶ 2] This action is the result of the sale and purchase of the Tailfeather Inn, a Mott, North Dakota convent converted into a home and hunting lodge Dahl and Wiegand purchased from Messmer. Messmer owned the former convent located in Mott. Messmer was using the convent as his residence and also renting it out as a hunting lodge. Messmer was managing the business and living in the building at the same time.

[¶ 3] Dahl and Wiegand were interested in purchasing the building as a place to stay on their hunting trips to Mott and to rent it out as a hunting lodge when they were not there. Dahl and Wiegand maintain they were not interested in running the hunting lodge operation themselves because they lived in Arizona. Dahl and Wiegand allege Messmer told them he would be willing to continue managing the hunting lodge business for them if they bought it. Dahl and Wiegand also allege Messmer represented to them that the hunting lodge made around $51,000 per hunting season, the building's furnaces were in good shape, the roof was still under warranty, and it cost around $500 per year to insure the building.

[¶ 4] Dahl and Wiegand allege they agreed to purchase the hunting lodge based on Messmer's representations regarding profitability, the building's condition and cost of insurance, and his intention to continue to manage the business.

The parties entered into a Management Contract which provided that Messmer would continue to stay at the property and manage the hunting lodge business. The contract provided the agreement could be terminated by either party upon 90 days notice. The parties closed the sale in March of 2003. Three days after the sale occurred, Messmer sent Dahl and Wiegand a letter terminating his management responsibilities. Dahl and Wiegand sued Messmer alleging he breached the contract requiring him to manage the hunting lodge and that he fraudulently misrepresented the profitability of the business and other facts about the business.

[¶ 5] Dahl and Wiegand contend they had to hire a new manager, they had to put the whole building on electric heat shortly after the sale because two furnaces were defective, and it cost around $3,000 per year to insure the building. Dahl and Wiegand also contend the Tailfeather Inn made only $15,000. They allege losses of $61,000 the first year they operated the business. They allege the business lost $45,000 the second year and is expected to lose $40,000 to $45,000 every year.

[¶ 6] Messmer moved for summary judgment on the Management Contract claim. The district court excluded certain evidence citing the parol evidence rule and granted Messmer's motion for partial summary judgment. The district court found the Management Contract was unambiguous and Messmer could terminate the relationship upon 90 days notice.

[¶ 7] During trial, Messmer moved for judgment as a matter of law on the remaining claims of misrepresentation. The district court granted Messmer judgment as a matter of law finding the statements made by Messmer were "puffing."

II

[¶ 8] On appeal, Dahl and Wiegand argue the district court erred by

granting partial summary judgment to Messmer on the Management Contract claim. The standard of review for summary judgments is well-established. In *Zuger v. State*, 2004 ND 16, ¶ 7, 673 N.W.2d 615 (citations omitted), this Court explained:

> Summary judgment is a procedural device for promptly disposing of a lawsuit without a trial if there are no genuine issues of material fact or inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. "Whether summary judgment was properly granted is 'a question of law which we review de novo on the entire record.' " On appeal, this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.

"Although actions involving state of mind, such as fraud, are not usually suited for disposition by summary judgment, if a plaintiff fails to support his opposition to a summary judgment motion with sufficient facts to show that there is a genuine issue for trial, then, even in these cases, summary judgment is appropriate." *Kary v. Prudential Ins. Co. of Am.*, 541 N.W.2d 703, 706 (N.D.1996). "Summary judgment is proper when a party fails to raise even a reasonable inference of the existence of an element essential to the party's claim, which must be proved at trial." *Id.* "A key element in proving fraud or deceit is reliance by the complaining party upon the false or misleading representations." *Id.* Furthermore, we must consider the substantive evidentiary standard of proof when reviewing a motion for summary judgment. *Matter of Estate of Stanton*, 472 N.W.2d 741, 743 (N.D.1991). "Fraud is never presumed, but must be proved by evidence that is clear and convincing." *Kary*, at 705.

■■ [¶ 9] "In the absence of an ambiguity, a written contract supersedes any prior oral agreement or negotiations between the parties." *Heart River Partners v. Goetzfried*, 2005 ND 149, ¶ 11, 703 N.W.2d 330; *see* N.D.C.C. § 9–06–07 (providing "[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument"). "Parol evidence is admissible, however, in an action to reform a written contract on the grounds of fraud or mutual mistake to establish the alleged fraud or mistake and to correct the instrument to conform to the agreement or intention of the parties." *Heart River Partners*, at ¶ 12. However, "[t]his Court has said a party who seeks reformation has the burden to prove by clear and convincing evidence that a written agreement does not fully or truly state the agreement the parties intended to make." *Id.* at ¶ 14.

■ [¶ 10] Although there was a written Management Contract in this case, Dahl and Wiegand argued Messmer represented he would stay and manage the hunting lodge business for a period longer than the period contained in the Management Contract. In granting partial summary judgment, the district court ruled no parol evidence would be allowed regarding the validity of the Management Contract and no claims for damages arising out of the Management Contract would be allowed at trial.

[¶ 11] In Dahl and Wiegand's opposition to the summary judgment motion, in which they argue parol evidence should be admissible and that genuine issues of material fact existed, the only evidence they offer is an affidavit from Wiegand stating he thought Messmer would continue as manager of the business for four and a half years and a major reason Dahl and Wiegand purchased the business was because they thought Messmer would continue as manager. The affidavit contains allegations but offers no supporting evidence of false or misleading representations, much less clear and convincing evidence. Although the affidavit alleges Messmer's purchase of another house in Mott shows he did not plan on continuing his management of the business, the affidavit does not expressly state that Messmer in any way misrepresented his intentions. Messmer's actions are not inconsistent with nor contrary to the language of the Management Contract. Dahl and Wiegand thus arguably offered proof of reliance but offered no clear and convincing proof of false or misleading representations.

[¶ 12] The allegations contained in the affidavit are not enough to overcome Dahl and Wiegand's burden to present clear and convincing evidence that the Management Contract did not reflect the parties' intentions nor is the evidence presented by Dahl and Wiegand in their opposition to the summary judgment motion enough to demonstrate any genuine issues for trial regarding parol evidence that would establish any misrepresentation. We affirm the district court's grant of partial summary judgment on the Management Contract claims.

### III

[¶ 13] Dahl and Wiegand contend the district court erred by granting Messmer's motion for judgment as a matter of law on their claims Messmer misrepresented the profitability and condition of the Tailfeather Inn. It is unclear whether Dahl and Wiegand are pursuing damages under a theory of fraud or deceit. The parties and the court below drew no distinction between fraud and deceit in the pleadings, arguments, or judgment and, for purposes of this appeal, neither will we.

[¶ 14] "The trial court's decision on a motion brought under N.D.R.Civ.P. 50 to deny or grant judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion." *Symington v. Mayo*, 1999 ND 48, ¶ 4, 590 N.W.2d 450. "The trial court's decision on a motion for judgment as a matter of law is fully reviewable on appeal." *Id.*

[¶ 15] "Generally, statements of value and predictions of future earnings or profits fall within the class of statements whose truth or falsity cannot be precisely determined and which are not, therefore, actionable as misrepresentations of fact." *Kary v. Prudential Ins. Co. of Am.*, 541 N.W.2d 703, 706 (N.D.1996). "Whether there were fraudulent representations or not in a given case must depend upon the facts in each case." *Gershman v. Engelstad*, 160 N.W.2d 80, 83 (N.D.1968). "General expressions of opinion by a seller, commendatory of the thing he is selling, are not actionable even though not entirely true." *Id.* at 86. "Hence, statements of opinion, as, for example, expressions by the seller commending the thing he is selling, have been held not actionable even though they are false." *Id.* at 83. "These expressions come within the term generally referred to as 'puffing' and are considered mere dealer's talk." *Id.*

[¶ 16] Dahl and Wiegand purchased the Tailfeather Inn "as is" and contracted not to hold Messmer liable for any non-disclosed or latent defects. Dahl and Wiegand presented testimony of Messmer's alleged fraudulent statements but presented no evidence showing Messmer's statements amounted to either fraud or deceit under N.D.C.C. §§ 9–03–08 or 9–10–02. The evidence presented at trial leads to the conclusion that Messmer's statements did not rise to the level of fraud or deceit and the district court properly granted judgment as a matter of law.

### IV

[¶ 17] We affirm the district court's grant of summary judgment and judgment as a matter of law.

[¶ 18] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, JJ., and JAMES M. BEKKEN, D.J., concur.

I concur in the result. DANIEL J. CROTHERS.

[¶ 19] The Honorable JAMES M. BEKKEN, D. J., sitting in place of SANDSTROM, J., disqualified.